[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The plaintiff husband was married to the defendant wife on August 25, 1987 at Stowe, Vermont.
No children were born to the wife during the course of the marriage, nor have any children been adopted.
This is the second marriage for the husband and the first for the wife. The husband has a minor child from his first marriage and is obligated under a New York State decree to pay $400.00 per month for the support of that minor child. He is also obligated to deposit a portion of his gross income into a future college fund for the child and to pay for certain activities of the child.
The husband is forty-one (41) years of age and in apparent good health. He has been employed with IBM for CT Page 4114 approximately fifteen (15) years and is presently a computer analyst. His present annual salary is $68,500.00; however, he also received a bonus of $11,800.00 in 1992 for 1991.
From the evidence, the court can find that the marital home was purchased by the husband prior to the marriage, but during the time that the live in arrangement between the parties had been commenced. The court further finds that the down payment and the expenses for purchase of the marital home came primarily from the husband's savings. The court finds this amount to be approximately $26,500.00.
The court further finds that at the time of the marriage, the husband also was the owner of a TDSP with a value of $15,000.00; an IRA with a value of $5,000.00; ATT stock with a value of $7,000.00; and a savings account with a value of $7,000.00. In addition, he had IBM stock which he subsequently sold during the marriage, which money was then put into a fund for his son's college education. These shares of stock were sold one week after he told his wife he wanted a divorce.
The most disturbing aspect of the testimony was the husband's reasons given for the breakdown of the marriage. He claims that problems arose about one year after the marriage. He testified that the activities which they once did together became less frequent, and the wife's handling of the finances became a source of concern. Further, he said that his relationship with his son and former wife caused his present wife to exhibit signs of jealousy. Finally, his wife gained weight and as a result he lost interest in having sex with her. Again, upon cross-examination he testified that his wife's weight gain was one of the causes for the breakdown of the marriage.
It is indeed a sorry state of affairs when the thread upon which a marriage is based is frayed by such circumstances as those given by the plaintiff husband. The court gives very little, if any, value to his testimony concerning the breakdown of the marriage. His testimony as to the relationship with Cathy Blake, and his denial of a sexual relationship with her, is also suspect. His demeanor, under cross-examination concerning this relationship, especially the Rhode Island weekend with Cathy Blake, leads the court to conclude that his testimony was less than forthright.
The court also does not accept his reasons for sending $8,500.00 to his parents. He admitted that if he ever needed the money it would be returned to him. CT Page 4115
The wife is thirty-seven (37) years of age and is in fair health. None of her current medical or psychological problems have prevented her from working throughout the marriage. This is her first marriage and in spite of the husband's relationship with Cathy Blake, she is still willing to take him back. The court is impressed with her testimony and accords it a great deal more credibility than that of her husband.
She claims that the first indication she had of any problems in the marriage occurred on January 16, 1991. This was the weekend when her husband went on a ski trip with Cathy Blake. Upon his return, three or four days later, he told his wife he had gone on this ski trip with Cathy Blake and now wanted to divorce her. All of the evidence points to a continuing relationship with Cathy Blake from this point forward.
The court finds that the wife brought few assets into the marriage. She did, however, contribute all of her earnings to the marriage.
The wife urges the court to give great weight to the cause of the breakdown of the marriage. Although the court includes that the husband's behavior was overwhelmingly the cause for the breakdown, nonetheless, fault is only one of the factors which the court must consider. When making an award of alimony, the court is directed by the legislature to consider the following factors: "the length of the marriage, the causes for the . . . dissolution of the marriage . . . the age, health, station, occupation, amount and sources of income, vocational skills, employability, estate and needs of each of the parties and the award, if any, which the court may make pursuant to section 46b-81 [assignment of property and transfer of title] . . . ." Section 46b-82 of the Connecticut General Statutes. These factors to be considered in awarding alimony under the statute closely parallel those under former case law. No one factor is controlling. The relevant considerations vary from case to case and depend upon the circumstances of the parties. Chambliss v. Chambliss, 171 Conn. 278, 279 (1976). Although the court has concluded that the major fault for the breakdown was the result of the husband's behavior, nonetheless, alimony should not be awarded as a reward to a spouse for virtue or as punishment for wrongdoing.
A dissolution of the marriage may enter.
Taking under consideration all of the testimony and CT Page 4116 exhibits and the factors mandated under Connecticut General Statutes, Secs. 46b-81 and 46b-82, the court further orders as follows:
1. The wife shall quitclaim to the husband, all of her right, title and interest in the Brookfield, Connecticut condominium and the time share. He shall be responsible for the payment of the mortgages and all of the other expenses attendant to the ownership of said premises and shall hold her harmless therefrom.
2. The wife shall retain her interest in the Pennsylvania property free of any claim by the husband.
3. The husband shall transfer to the wife all of his right, title and interest in the 1985 LeBaron automobile.
4. Except as otherwise ordered by the court, each of the parties shall be entitled to the assets listed in their respective names alone, including all pension benefits.
5. The wife shall vacate the marital premises within forty-five (45) days.
6. The husband shall provide for the wife, if available through his employment, COBRA coverage, at his expense for the first two years and at the wife's expense for the third year.
7. Each of the parties shall be responsible for their own liabilities and attorney's fees.
8. The husband shall pay to the wife as a property distribution, within sixty (60) days, the sum of $40,000.00.
MIHALAKOS, J.